UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROLAND THOMAS KOCH,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>PAM AHLIN, et al.,<br><br>　　　　Defendants. | 1:18-cv-00546-LJO-GSA-PC<br><br>**ORDER DENYING MOTION FOR APPOINTMENT OF COUNSEL**<br><br>**ORDER DISMISSING FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM, WITH LEAVE TO AMEND (ECF No. 16.)**<br><br>**THIRTY-DAY DEADLINE TO FILE SECOND AMENDED COMPLAINT** |

**I.　BACKGROUND**

Roland Thomas Koch ("Plaintiff") is a civil detainee proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this case on April 19, 2018. (ECF No. 1.)

On December 18, 2018, the court screened the Complaint and dismissed it for failure to state a claim, with leave to amend. (ECF No. 15.) On January 10, 2019, Plaintiff filed the First Amended Complaint which is now before the court for screening. 28 U.S.C. § 1915. (ECF No. 16.)

**II.　SCREENING REQUIREMENT**

Notwithstanding any filing fee, the court shall dismiss a case if at any time the Court determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which

1

relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); see Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) (section 1915(e) applies to all *in forma pauperis* complaints, not just those filed by prisoners).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

Under section 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

In reviewing the *pro se* complaint, the court is to liberally construe the pleadings and accept as true all factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Iqbal, 556 U.S. at 678. "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . .

'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Therefore, the complaint must contain sufficient factual content for the court to draw the reasonable conclusion that the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678.

### III. SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is a civil detainee presently detained at Coalinga State Hospital (CSH), where the events at issue in the First Amended Complaint allegedly occurred. Plaintiff names as defendants Pam Ahlin (Executive Director), John Doe (staff), Jane Doe (staff), and Jack Carter (Chief of Police Services, CSH) (collectively, "Defendants").

Plaintiff's allegations follow:

The Executive Director of State Hospitals, Pam Ahlin, ordered her employees to confiscate property from Plaintiff and other State Hospital patients which caused Plaintiff's property to be taken, denying him of his right to own and possess legal property.

Jack Carter, Chief of Police Services of CSH, supervised his employees ordering them to confiscate property from Plaintiff and others. Plaintiff's legal property was taken. John Doe and Jane Doe (staff, not officers) stole Plaintiff's property and destroyed it, and refused to return it or reimburse Plaintiff for more than a year.

Plaintiff asserts that he is not a "prisoner," is not "committed," and is not a "patient," yet "prisoners" are allowed to have an X-box and MP3 music player, but Plaintiff is not. (ECF No. 16 at 9.) Plaintiff alleges that he has been fighting for ten years to go to court to determine if he should be detained at CSH. Plaintiff asserts that he is being detained because he might/could break a law, and his property is being taken and destroyed because he might/could break a law with it. Plaintiff alleges that he is being punished more than prisoners who did break a law, many who are serving sentences for sex offenses. The facility falsified information to the courts with regard to "patients" possessing property. (ECF No. 16 at 10.) Confiscation of property for security reasons is false. Employees used physical force to take legal property from Plaintiff.

A simple headphone cord is obviously not contraband of any sort, and yet it was confiscated as were a set of earbud headphones, a radio, a tablet, remote control to Plaintiff's

TV, pens, pencils, and highlighters. A year later, this dangerous contraband has not been returned or reimbursed.

As relief, Plaintiff requests appointment of counsel, monetary damages, declaratory relief, and injunctive relief.

**IV.     MOTION FOR APPOINTMENT OF COUNSEL**

Plaintiff requests appointment of counsel to assist him with this lawsuit. (ECF No. 16 at 11 ¶ 1(a)). Plaintiff does not have a constitutional right to appointed counsel in this action, <u>Rand v. Rowland</u>, 113 F.3d 1520, 1525 (9th Cir. 1997), and the court cannot require an attorney to represent Plaintiff pursuant to 28 U.S.C. § 1915(e)(1). <u>Mallard v. United States District Court for the Southern District of Iowa</u>, 490 U.S. 296, 298, 109 S.Ct. 1814, 1816 (1989). However, in certain exceptional circumstances the court may request the voluntary assistance of counsel pursuant to section 1915(e)(1). <u>Rand</u>, 113 F.3d at 1525.

Without a reasonable method of securing and compensating counsel, the court will seek volunteer counsel only in the most serious and exceptional cases. In determining whether "exceptional circumstances exist, the district court must evaluate both the likelihood of success of the merits [and] the ability of the [plaintiff] to articulate his claims *pro se* in light of the complexity of the legal issues involved." <u>Id.</u> (internal quotation marks and citations omitted).

In the present case, the court does not find the required exceptional circumstances. At this early stage in the proceedings the court cannot make a determination that Plaintiff is likely to succeed on the merits. Plaintiff's complaint is in the screening stage under 28 U.S.C. 1915. The legal issues in this case -- whether Defendants violated Plaintiff's rights when they took his personal property, denied him access to the courts and freedom of association, and used force or threat of force against him -- are not complex. Moreover, based on a review of the record in this case, the court finds that Plaintiff can adequately articulate his claims. Therefore, Plaintiff's motion for appointment of counsel shall be denied without prejudice, to renewal of the motion at a later stage of the proceedings.

///

///

## V. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp.,

637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A. Civil Detainees[1]

Plaintiff is a civil detainee at CSH. "Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose condition of confinement are designed to punish." Youngberg v. Romeo, 457 U.S. 307, 321-22 (1982). A civil detainee "is entitled to protections at least as great as those afforded to a civilly committed individual and at least as great as those afforded to an individual accused but not convicted of a crime." Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004). Nevertheless, civilly committed persons can "be subjected to liberty restrictions 'reasonably related to legitimate government objectives and not tantamount to punishment.'" Serna v. Goodno, 567 F.3d 944, 949 (8th Cir. 2009) (quoting Youngberg, 457 U.S. at 320-21).

### B. Personal or Official Capacity

It is not clear whether Plaintiff intends to bring this action against Defendants in their personal capacities, official capacities, or both. Plaintiff may not bring a suit for damages against Defendants in their official capacities. "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacities, Hafer v. Melo, 502 U.S. 21, 30 (1991); Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003), or suits for declaratory or injunctive relief brought against state officials in their official capacities, Austin v. State Indus. Ins. System, 939 F.2d 676, 680 fn.2 (9th Cir. 1991).

---

[1] Plaintiff alleges that he is a civil detainee currently pending commitment, and he has not yet been adjudicated to be a Sexually Violent Predator (SVP). However, whether Plaintiff has been adjudicated to be an SVP, or is pending adjudication, is irrelevant as the same standards apply to all detainees. See Simmons v. Sacramento Cty. Superior Court, 318 F.3d 1156, 1160 (9th Cir. 2003) ("Pretrial detainees have a substantive due process right against restrictions that amount to punishment."); Youngberg, 457 U.S. at 307 (substantive due process liberty interest exists for individual committed to a state institution for the mentally retarded). An individual who is awaiting commitment cannot be detained under conditions more restrictive than he would face upon commitment, Jones, 393 F.3d at 933, and there are no allegations in this case that Plaintiff is being treated differently than individuals who have been adjudicated to be a SVP.

Therefore, Plaintiff fails to state a claim for damages against Defendants in their official capacities, but he is not barred by the Eleventh Amendment from seeking injunctive or declaratory relief against Defendants in their official capacities, or from seeking money damages from Defendants in their personal capacities.

Where, as here, the complaint is unclear, the Court will determine the capacity in which a defendant is being sued based on the claims asserted and nature of relief sought. Price v. Akaka, 928 F.2d 824, 828 (9th Cir. 1990) (citing Central Reserve Life Ins. Co. v. Struve, 852 F.2d 1158, 1161 (9th Cir. 1988)). Here, Plaintiff seeks monetary damages, injunctive relief, and declaratory relief. A plaintiff pursuing claims against defendants in their official capacities must demonstrate that a policy or custom of the governmental entity of which the official is an agent was the moving force behind the violation. See Hafer, 502 U.S. at 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). That is, the plaintiff must establish an affirmative causal link between the policy at issue and the alleged constitutional violation. See City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 391–92, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996). Furthermore, "[a] plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation." Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1127 (9th Cir. 2013) (citing Hafer, 502 U.S. at 25, 112 S.Ct. 358). "Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief." Id. (citing Los Angeles County v. Humphries, 562 U.S. 29, 35–36, 131 S.Ct. 447, 178 L.Ed.2d 460 (2010)).

Plaintiff alleges that force, or threat of force, was used against him by some of the Defendants when they confiscated his property. These allegations indicate personal wrongs on the part of individual Defendants. Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law." Hafer, 502 U.S. at 25; Suever v. Connell, 579 F.3d 1047, 1060 (9th Cir. 2009). Where a plaintiff is seeking damages against a state official and the complaint is silent as to capacity, a personal capacity suit is

presumed given the bar against an official capacity suit. Shoshone-Bannock Tribes v. Fish & Game Comm'n, 42 F.3d 1278, 1284 (9th Cir. 1994); Price, 928 F.2d at 828.

### C. Substantive Due Process – Fourteenth Amendment

"[T]he due process clause includes a substantive component which guards against arbitrary and capricious government action, even when the decision to take that action is made through procedures that are in themselves constitutionally adequate." Halverson v. Skagit Cty., 42 F.3d 1257, 1261 (9th Cir. 1994), as amended on denial of reh'g (Feb. 9, 1995) (quoting Sinaloa Lake Owners Ass'n v. City of Simi Valley, 882 F.2d 1398, 1407 (9th Cir. 1989)). In determining whether conditions of confinement of civilly committed individuals violate the constitution, courts look to the substantive due process clause of the Fourteenth Amendment. Youngberg, 457 U.S. at 321-22; Jones, 393 F.3d at 931-34. Civilly committed persons have a substantive due process right to be free from restrictions that amount to punishment. United States v. Salerno, 481 U.S. 739, 746–47, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); Bell v. Wolfish, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

The Fourteenth Amendment requires the government to do more than provide the "minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Rather, "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana, 406 U.S. 715, 738, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972). A civil detainee is entitled to more considerate treatment than criminally detained individuals, and when a civil detainee is confined in conditions identical to, similar to, or more restrictive than those applied to individuals detained under criminal codes, it is presumed that the detainee is being subjected to punishment. Jones, 393 F.3d at 932 (citing Sharp v. Weston, 233 F.3d 1166, 1172–73 (2000)). However, civilly detained individuals can be subject to restrictions that have a legitimate, non-punitive government purpose and that do not appear to be excessive in relation to that purpose. Bell, 441 U.S. at 535. The SVPA[2] "generally requires a careful balancing of the rights of

---

[2] California's Sexually Violent Predator Act, Cal. Welf. & Inst. Code §§ 6600 et seq.

individuals who are detained for treatment, not punishment, against the state's interests in institutional security and the safety of those housed at the facility." Hydrick v. Hunter, 500 F.3d 978, 990 (9th Cir. 2007), *vacated on other grounds by* Hunter v. Hydrick, 556 U.S. 1256, 129 S.Ct. 2431, 174 L.Ed.2d 226 (2009). There is no constitutional violation if the restrictions "are an incident of some other legitimate government purpose." Simmons v. Sacramento Cty. Superior Court, 318 F.3d 1156, 1160 (9th Cir. 2003). "A reasonable relationship between the governmental interest and the challenged restriction does not require an exact fit, nor does it require showing a 'least restrictive alternative.'" Valdez v. Rosenbalm, 302 F.3d 1039, 1046 (9th Cir. 2002) (citations omitted). The only question is whether the defendants might reasonably have thought that the policy would advance its interests. Id.

Here, Plaintiff claims that the regulation followed at CSH permitting confiscation of his property violates his substantive due process rights. He asserts that the regulations being applied to him, a civil detainee, are more restrictive than those applied to individuals held pursuant to criminal codes, suggesting he is being held in conditions designed to punish. Plaintiff alleges that he is not allowed to have property, such as an MP3 music player or X-Box, whereas convicted prisoners, even those serving sentences for sex offenses, are allowed to have such property.

Plaintiff alleges that he is a civil detainee currently pending commitment and has not yet been adjudicated to be a Sexually Violent Predator. The SVPA provides for a civil commitment of "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." Cal. Welf. & Inst. Code § 6600(a)(1). Individuals committed under the SVPA are housed at CSH; California's Department of State Hospitals (DSH) is responsible for the operation of the facility and the provision of treatment. Cal. Wel. & Inst. Code § 6600.05 (a),(b); see also Cal. Wel. & Inst. Code § 4100 (b) (providing that DSH has jurisdiction over CSH).

DSH may adopt and enforce the rules and regulations necessary to carry out its duties. Cal. Wel. & Inst. Code §§ 4005.1, 4027, 4101. This includes promulgating regulations relating to the care and treatment of those detained under both penal and civil codes. Cal. Wel. & Inst.

Code § 4027. All DSH institutions are governed by uniform rules and regulations, unless otherwise provided. Cal. Wel. & Inst. Code § 4101.

Under Title 9 of the California Code of Regulations, DSH has adopted rights and related procedures for all individuals (excluding those committed under the Lanterman-Petris–Short Act[3] ("LPS")) placed in or committed to state hospitals. See Cal. Code Regs. tit. 9, § 880–892. These regulations afford non–LPS patients deniable and undeniable rights. Cal. Code Regs. tit. 9, § 883–884. Among the rights that may be denied in accordance with established laws are the rights to personal possessions and individual secured storage facilities. Cal. Code Regs. tit. 9, § 884(b)(1,2). These regulations also provide that "[n]on LPS–patients shall not have access to the internet." Cal. Code Regs. tit. 9, § 891. Additionally, Cal. Code Regs. tit. 9, § 4350 ("Regulation 4350"), which applies to all state hospitals and all DSH patients, prohibits access to nearly all electronic devices that can connect to the internet. See Cal. Code Regs. tit. 9, § 4350.

When civil detainees are held in conditions similar to or more restrictive than those held under criminal commitments, there is a presumption that the detention is punitive, as stated in Jones, 393 F.3d at 932 (when a SVPA detainee is confined in conditions identical to, similar to, or more restrictive than, those in which his criminal counterparts are held, we presume that the detainee is being subjected to "punishment;" see Sharp v. Weston, 233 F.3d 1166, 1172–73(9th Cir. 2000)). However, Jones presented a much more extreme version of "similar conditions": there, a civil detainee held under the SVPA was housed for over two (pretrial) years in a county jail under all of the same conditions as individuals being held for criminal punishment. 393 F.3d at 924. Plaintiff here is not being held under conditions designed for criminal detention. He is in a facility designed and operated to provide for the safety of mentally ill offenders undergoing inpatient treatment. DSH regulations are intended to govern the treatment of mentally ill individuals, both civilly and criminally committed. See Cal. Code Regs. tit. 9, § 880; Cal. Wel. & Inst. Code § 4027. The mere fact that the same regulations are applied to those held under

///

---

[3] Welfare and Institutions Code section 5000 et seq.

civil codes as those held under penal codes, does not mean the former are being held in punitive conditions.

To the extent that Plaintiff alleges that state and county prisoners in other California facilities have greater access to the internet and electronic devices than patients at CSH -- which necessarily means he is being held under regulations more restrictive than those designed to punish prisoners -- this logic is flawed. Confinement facilities obviously must be designed and operated in ways appropriate to the particular types of inmates being housed there. Patients at CSH with access to the internet and electronic devices have used that access to download and distribute child pornography. Such abuse is the antithesis of what is appropriate for these inmates and the safety of society. Certainly, it is reasonable for the system to design protections against such abuse even if those protections are unique to that facility or group of inmates. Not the least of such concerns is society's legitimate concern with re-victimization of children resulting from sharing and re-accessing child pornography. See United States v. Kearney, 672 F.3d 81, 94 (1st Cir. 2012) (noting the continuing harm that results from the distribution and possession of child pornography). Maintaining institutional security and providing for the safety of patients and the public are legitimate government interests. Wolfish, 441 U.S. at 566, 99 S.Ct. 1861; Hallstrom, 991 F.2d at 1484.

Quite simply, the unique challenges of the security situation at state hospitals overcomes any otherwise existing inference that the regulatory framework is punitive simply because it is harsher than at other facilities. Thus, Regulation 4350 serves a legitimate government interest.

In summary, the court finds, based upon the information before it at this time, that the regulatory framework governing DSH and CSH was not designed to punish, and Plaintiff has not shown that it creates punitive conditions. Plaintiff's claim that the regulatory framework is punitive is not cognizable as pled.

### E.     **Procedural Due Process – Fourteenth Amendment**

The Due Process Clause protects against the deprivation of liberty and property without due process of law. Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393 (2005). In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the

11

existence of a liberty or property interest for which the protection is sought. Id. Protected interests may arise from the Due Process Clause itself or from state law. Id. The Ninth Circuit has not addressed the precise standard to be applied to procedural due process claims brought by civil detainees; however, they have found that "individuals detained under the SVPA must, at a minimum, be afforded the rights afforded prisoners confined in a penal institution." Hydrick, 500 F.3d at 998.) District Courts have applied the same standards for prisoners to civil detainees. See e.g., Koch v. King, No. 1:15-cv-00438 SKO, 2017 WL 117790, 2017 U.S. Dist. LEXIS 5027 (E.D. Cal. Jan. 11, 2017); Cerniglia v. Price, No. 117CV00753AWIJLTPC, 2017 WL 4865452 (E.D. Cal. Oct. 27, 2017); Allen v. King, No. 1:06-cv-01801-BLW-LMB, 2016 WL 4381288, 2016 U.S. Dist. LEXIS 108748 (E.D. Cal. Aug. 16, 2016); Smith v. Ahlin, No. 1:16-cv-00138-SKO (PC), 2016 WL 5943920, 2016 U.S. Dist. LEXIS 141587 (E.D. Cal. Oct. 12, 2016); Johnson v. Knapp, No. CV 02-9262-DSF (PJW), 2008 U.S. Dist. LEXIS 125001 at *14 (C.D. Cal. Dec. 17, 2008); Johnson v. Witter, No. 3:13-cv-00689-MMD-VPC, 2015 WL 1505664, at *3-4, 2015 U.S. Dist. LEXIS 41941 at *8-9 (D. Nev. Mar. 31, 2015).

Plaintiff alleges that his personal property was taken during a confiscation of property from patients at the State Hospital by defendants Jack Carter (Chief of Police, CSH), John Doe (staff), and Jane Doe (staff), under orders of the Executive Director of State Hospitals, Pam Ahlin. Plaintiff alleges that staff took from him a set of earbud headphones, a radio, a tablet, the remote control to his television, pens, pencils, and highlighters, and the items have not been returned to him a year later. Plaintiff also contends that the property was not confiscated for security reasons.

It is beyond dispute that civil detainees have a protected interest in personal property. Bell, 441 U.S. at 554 (The Due Process Clause provides protection for convicted prisoners and pretrial detainees alike against the deprivation of their property without due process of law). In this context, the Due Process Clause protects [Plaintiff] from being deprived of his property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). An authorized, intentional deprivation of property is actionable under the Due Process Clause. However, a plaintiff has no due process claim based on an unauthorized deprivation of property by a state

employee, whether intentional or negligent, if a meaningful state post-deprivation remedy for his loss is available. See Hudson v. Palmer, 468 U.S. 517, 533 (1984). California's tort claim process provides that adequate post-deprivation remedy. Barnett v. Centoni, 31 F.3d 813, 816–17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810–895) ("[A] negligent or intentional deprivation of a prisoner's property fails to state a claim under section 1983 if the state has an adequate post deprivation remedy."); see also Teahan v. Wilhelm, 481 F. Supp. 2d 1115, 1120 (S.D. Cal. 2007); Kemp v. Skolnik, No. 2:09-CV-02002-PMP, 2012 WL 366946, at *6 (D. Nev. Feb. 3, 2012) (finding prisoner's alleged loss or destruction of newspaper, magazines, and books failed to state a Fourteenth Amendment claim pursuant to Hudson and noting that "[i]f Plaintiff wishes to recoup the value of the alleged lost materials, he will have to file a claim in small claims court in state court.").

It appears that Plaintiff's lawsuit was instigated by the promulgation of amendments to Regulation 4350.[4] However, Plaintiff has not alleged that his property was taken from him pursuant to Regulation 4350. In fact, none of the property taken from Plaintiff was property prohibited by Regulation 4350. Under Regulation 4350, patients are allowed to possess or have personal access to electronic items that do not conflict with the prohibition of electronic devices that have the ability to connect with the internet. None of the property taken from Plaintiff had the ability to connect with the internet. Patients are allowed one television or computer monitor; one DVD, Blu-ray, or similar player; one CD player; one radio or music player; no more than thirty commercially manufactured and unmodified CDs, DVDs, and Blu-Rays; and tablets or other devices that do not contain personally accessible data storage. Cal. Code Regs. tit. 9, § 4350(b) (current to November 22, 2019).[5]

---

[4] On January 12, 2018, Regulation 4350 was amended as an emergency, operative January 12, 2018. Cal Code Regs. tit. 9, § 4350, History ¶ 3. On June 21, 2018, the January 12, 2018 order was refiled as an emergency, including further amendment of section and Note, operative July 12, 2018. Id. at ¶ 4. Another amendment was filed on October 4, 2018 as an emergency, operative October 11, 2018. Id. at ¶ 5. On December 26, 2018, a further amendment was submitted, operative February 5, 2019 pursuant to Government Code section 11343.4(b)(3). Id. at ¶ 6.

[5] Plaintiff filed the original Complaint on April 19, 2018, alleging that his property had been taken from him and had not been returned for more than 90 days. (ECF No. 1 at 3 ¶ 3.) In the First Amended Complaint filed on January 10, 2019, Plaintiff alleges that his stolen property had not been returned to him "a year

Plaintiff asserts that none of the listed items taken from him were contraband under Regulation 4350. A plain reading of the regulatory text suggests that these items were not banned under Regulation 4350's prohibition against electronic devices that can send or receive information. See Cal. Code Regs. tit. 9, § 4350(a). Therefore, Plaintiff fails to allege facts suggesting that the confiscation of Plaintiff's property was authorized by Regulation 4350.

Plaintiff alleges that the confiscation of his property was unauthorized and intentional. Therefore, because Plaintiff has an adequate post-deprivation remedy under California law, he fails to state a due process claim for the loss of the property that was improperly taken from him.

### F. Access to Courts

Plaintiff brings a claim for denial of access to courts. The Constitution guarantees detained people meaningful access to the courts. Bounds v. Smith, 430 U.S. 817, 822, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). This includes civil detainees. Hydrick, 500 F.3d at 990; Cornett v. Donovan, 51 F.3d 894, 898 (9th Cir. 1995) (holding that "right of access [to the courts] is guaranteed to people institutionalized in a state mental hospital regardless of whether they are civilly committed after criminal proceedings or civilly committed on grounds of dangerousness").

Detainees and prisoners have the right to pursue claims, without active interference, that have a reasonable basis in law or fact. See Silva v. Di Vittorio, 658 F.3d 1090, 1103–04 (9th Cir. 2011) (finding that repeatedly transferring the plaintiff to different prisons and seizing and withholding all of his legal files constituted active interference) *overruled on other grounds as stated by* Richey v. Dahne, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015). This right forbids state actors from erecting barriers that impede the right of access to the courts of incarcerated persons. Id. at 1102 (internal quotations omitted). However, in order to state a colorable claim for denial of

---

later." (ECF No. 16 at 4.) Neither of the complaints provides the specific date that the property was taken. However, under Plaintiff's allegations, the January 12, 2018 version of Regulation 4350 would have been in effect when his property was taken. In the present order, the court refers to the current version of Regulation 4350, operative on February 9, 2019. With respect to the electronic devices that are permissible or impermissible, the January 12, 2018 version of Regulation 4350 is not materially different from the current version. Therefore, even under the earlier version of the regulation, Plaintiff was permitted to possess the items taken from him.

access to the courts, Plaintiff must allege that he suffered an actual injury. Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed. 2d 606 (1996). "Actual injury" means a "specific instance in which an inmate was actually denied access to the courts." Sands v. Lewis, 886 F.2d 1166, 1171 (9th Cir. 1989).

Plaintiff merely mentions a claim for "access to courts" in the first Amended Complaint, but he alleges no facts in support of this claim. (ECF No. 16 at 4.) Plaintiff has not alleged that he suffered an actual injury. Therefore, Plaintiff fails to state a claim for denial of access to courts.

### G. Freedom of Association

The First Amendment guarantees freedom of association. The Supreme Court has described freedom of association as follows:

> Our decisions have referred to constitutionally protected "freedom of association" in two distinct senses. In one line of decisions, the Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty. In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment-speech, assembly, petition for the redress of grievances, and the exercise of religion. The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties. The intrinsic and instrumental features of constitutionally protected association may, of course, coincide.

Wolfenbarger v. Black, No. CIVS03-2417MCEEFBP, 2008 WL 828751, at *18 (E.D. Cal. Mar. 27, 2008), adopted as modified, No. CIV S032417 MCEEFB P, 2008 WL 3367608 (E.D. Cal. Aug. 8, 2008) (citing Roberts v. United States Jaycees, 468 U.S. 609, 617-618, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984).

Here, Plaintiff merely mentions "Freedom of Association (phone calls and visits)" as a claim in the First Amended Complaint and alleges no facts in support of a freedom of association claim. (ECF No. 16 at 4.) Plaintiff makes no allegations that he has been denied phone calls or visits. Nor does Plaintiff allege that his freedom of association was limited in the sense that the limitations on his interactions with others are punitive and inconsistent with legitimate

///

institutional goals for maintaining safety and security within CSH. Therefore, Plaintiff fails to state a claim for denial of freedom of association.

### H. Threat of Force

Plaintiff alleges that he was subjected to threat of force by Defendants. Verbal harassment or abuse alone is not sufficient to state a claim under section 1983, <u>Oltarzewski v. Ruggiero</u>, 830 F.2d 136, 139 (9th Cir. 1987), and threats do not rise to the level of a constitutional violation, <u>Gaut v. Sunn</u>, 810 F.2d 923, 925 (9th Cir. 1987). Therefore, Plaintiff fails to state a claim for threat of force.

### I. Excessive Use of Force

It is the Due Process Clause of the Fourteenth Amendment that protects civil detainees from the use of excessive force which amounts to punishment, <u>Gibson v. County of Washoe, Nev.</u>, 290 F.3d 1175, 1197 (9th Cir. 2002) (citing <u>Graham</u>, 490 U.S. at 395 n.109), and the Fourth Amendment sets the applicable constitutional limitations for considering such claims, <u>Lolli v. County of Orange</u>, 351 F.3d 410, 415 (9th Cir. 2003) (citing <u>Gibson</u>, 290 F.3d at 1198) (quotation marks omitted).

In resolving claims of excessive force brought by civil detainees, the Fourth Amendment's objective reasonableness standard applies. <u>Lolli</u>, 351 F.3d at 415. The inquiry is whether Defendants' actions were objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. <u>Id.</u> (citing <u>Graham</u>, 490 U.S. at 397) (quotation marks omitted). The nature and quality of the intrusion on Plaintiff's Fourth Amendment interests must be balanced against the countervailing governmental interests at stake. <u>Id.</u> (citing <u>Graham</u>, 490 U.S. at 397) (quotation marks omitted). Factors may include the severity of the incident giving rise to the use of force, whether Plaintiff posed an immediate threat to the safety of Defendants or others, and whether Plaintiff was actively attempting to avoid being subdued or brought under control. <u>See</u> <u>Gibson</u>, 290 F.3d at 1198 (citation omitted).

Plaintiff alleges that he can prove that physical force was used against him when defendants Carter, John Doe, and Jane Doe took his legal property. However, Plaintiff alleges no facts showing that any of the Defendants used any force against him. To state a claim, Plaintiff

must name the individual Defendant(s) and explain what happened – what Plaintiff saw, heard, or otherwise knew -- showing what each individual Defendant did that caused a violation of his rights. Therefore, Plaintiff fails to state a claim for use of excessive force under the Fourth and Fourteenth Amendments.

### J. Doe Defendants

Plaintiff names John Doe and Jane Doe (staff members) as defendants in this action. Unidentified, or "John Doe" defendants must be named or otherwise identified before service can go forward. "As a general rule, the use of 'John Doe' to identify a defendant is not favored." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiff is advised that John Doe or Jane Doe defendants cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute names for John Doe or Jane Doe. For service to be successful, the Marshal must be able to identify and locate defendants.

## VI. CONCLUSION AND ORDER

For the reasons set forth above, the court finds that Plaintiff fails to state any cognizable claims in the First Amended Complaint against any of the Defendants. Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." Therefore, Plaintiff shall be granted leave to amend the complaint. The court will provide Plaintiff with time to file a Second Amended Complaint curing the deficiencies identified above, within thirty days. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

The amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 556 U.S. at 678; Jones, 297 F.3d at 934. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Iqbal at 678 (quoting Twombly, 550 U.S. at 555). There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677. Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones, 297 F.3d at 934 (emphasis added). Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of adding new defendants for unrelated issues. Plaintiff should also note that he has not

///

been granted leave to add allegations of events occurring after the initiation of this suit on April 19, 2018.

Plaintiff is advised that an amended complaint supersedes the original complaint, <u>Lacey v. Maricopa County</u>, 693 F. 3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be complete in itself without reference to the prior or superseded pleading. Local Rule 220. Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion for appointment of counsel is denied without prejudice;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;
3. Within thirty days from the date of service of this order, Plaintiff shall file a Second Amended Complaint curing the deficiencies in the First Amended Complaint found by the court;
4. Plaintiff shall caption the amended complaint "Second Amended Complaint" and refer to the case number 1:18-cv-00546-LJO-GSA-PC; and
5. Plaintiff's failure to comply with this order shall result in a recommendation that this action be dismissed for failure to state a claim.

IT IS SO ORDERED.

Dated: __**December 19, 2019**__           __/s/ Gary S. Austin__
                                                        UNITED STATES MAGISTRATE JUDGE